UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA KNIGHT and MARCIE DAVE, individually and on behalf of all others similarly situated, | No. 08-01520 SC |
| Plaintiffs, | ORDER GRANTING JOINT APPLICATION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING PLAINTIFFS' MOTION FOR ORDER (1) APPROVING APPLICATION FOR ATTORNEYS' FEES; (2) GRANTING REIMBURSEMENT OF EXPENSES; AND (3) GRANTING INCENTIVE AWARDS |
| v. | |
| RED DOOR SALONS, INC., an Arizona Corporation, | |
| DEFENDANT. | |

**I.   <u>INTRODUCTION</u>**

On October 15, 2008, the parties in this litigation stipulated to a settlement of all claims.  <u>See</u> Class Action Settlement Agreement, Docket No. 32 ("Settlement Agreement").  The parties then sought and received the Court's preliminary approval of the Settlement.  <u>See</u> Docket Nos. 30, 31, 40.  Plaintiffs Lisa Knight and Marcie Dave ("Plaintiffs") and Defendant Red Door Salons, Inc. ("Red Door") now jointly apply for an order granting final approval of the Settlement.  <u>See</u> Docket No. 42 ("Settlement Motion").  Plaintiffs also move the Court for an order (1) approving application of attorneys' fees; (2) granting reimbursement of expenses; and (3) granting incentive awards.  <u>See</u> Docket No. 48 ("Fees Motion").

United States District Court<br>For the Northern District of California

The Court received no objections from members of the class to either the Settlement or the proposed attorneys' fees, expenses, and incentive awards.  The parties appeared before the Court for a final hearing to evaluate the fairness of the settlement on January 23, 2008.  Having considered all of the parties' arguments, as well as the supporting documents and declarations, the Court hereby GRANTS the Settlement Motion and GRANTS the Fees Motion.

## II.   **BACKGROUND**

Plaintiffs brought this class action suit on January 31, 2008, in the Superior Court of the State of California for the County of San Francisco.  See Notice of Removal, Docket No. 1, Ex. C. ("Compl.").  The Complaint challenged commission calculations for employees at the Elizabeth Arden Red Door Spa in San Francisco. Id. ¶¶ 28-39.  It also alleged that Red Door failed to provide required overtime pay, meal and rest breaks, wage statements, and utilized an unlawful covenant not to compete.  Id. ¶¶ 40-78.  On March 19, 2008, Red Door removed the case to this Court.  See Notice of Removal.  On May 23, 2008, Red Door answered the Complaint, denying many of the allegations and alleging affirmative defenses.  See Answer, Docket No. 17.  On September 18, 2008, the parties engaged in arms-length mediation at JAMS before the Honorable James Warren (Ret.), and reached an agreement.  See Von Loewenfeldt Decl. ¶ 11.[1]

---

[1] Michael Von Loewenfeldt, counsel for Plaintiffs, submitted a declaration in support of the Settlement Motion ("Von Loewenfeldt Decl."), Docket No. 45.  A supplemental declaration was attached to the Joint Reply Br. In Supp. of Mot. For Final Approval ("Von

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

On October 15, 2008, the parties entered into a written
Settlement Agreement. <u>See</u> Docket No. 32. Pursuant to the
Settlement Agreement, Red Door will establish a Settlement Fund of
$500,000. Settlement Agreement § 2.1. The Settlement Fund would
be used to make payments for attorneys' fees, expenses, and
incentive awards to Lisa Knight and Marcie Dave as class
representatives ("Class Representatives"), with the remainder
comprising the Net Settlement Fund. <u>Id.</u> §§ 1.12, 4, 8. Half of
the Net Settlement Fund will be distributed to Class Members on a
pro rata basis calculated by each Class Member's share of Business
Expense Charges ("BEC"), with 20% of this amount attributed to
interest. <u>Id.</u> § 5.1.1. Twenty percent of the Net Settlement
Amount will be divided among the Class Members on a pro rata basis
calculated by each Class Member's total compensation during the
Class Period, with 20% of this amount attributed to interest. <u>Id.</u>
§ 5.1.2. Thirty percent of the Net Settlement Fund will be paid to
Class Members who are former employees as of the date of the
Preliminary Approval of the Settlement Agreement to compensate them
for waiting time pay under California Labor Code § 203. <u>Id.</u> §
5.1.3. Red Door has agreed to pay all costs of sending payments to
Class Members. <u>Id.</u> § 6.2. Red Door has agreed to pay applicable
employer tax contributions with respect to payments to Class
Members. <u>Id.</u> § 7.3.

Red Door has agreed to change certain business practices.
First, Red Door will cease using non-competition provisions in its

Loewenfeldt Supp. Decl."), Docket No. 57.

3

California employment contracts, and will contact employees who signed them to inform them that the provisions will not be enforced. <u>Id.</u> § 3.1. Second, Red Door will calculate overtime pay in a manner that takes into account all non-discretionary income. <u>Id.</u> § 3.2. Third, Red Door will either provide employees with advance notice of BEC charges, or will offer and pay service commissions on sales prices paid by customers without any BEC. <u>Id.</u> § 3.3.

The Court preliminarily approved the settlement on October 30, 2008. <u>See</u> Docket No. 40. Pursuant to the settlement and the Court's approval, Kerr & Wagstaffe LLP, counsel for Plaintiffs, sent notices of the proposed settlement to 86 prospective class members on November 13, 2008. Von Loewenfeldt Decl. ¶ 18. Sixteen notices were returned as undeliverable. Hough Decl. ¶ 16.[2] Moss & Hough, counsel for Plaintiffs, obtained updated addresses for all but two of the Class Members. <u>Id.</u> Using phone numbers provided by Red Door, Moss & Hough attempted to contact the two remaining Class Members. <u>Id.</u> The phone number for one of the two was disconnected, and Moss & Hough left a voicemail for the other Class Member, but received no call back. <u>Id.</u> An additional call almost two weeks later was unanswered. <u>Id.</u>

January 2, 2009, was the date set in the notice for any requests to be excluded from the Class, for any objections to the settlement, or for any opposition to the request for final approval

---

[2] Mary Patricia Hough, counsel for Plaintiffs, filed a declaration in support of the Settlement Motion ("Hough Decl."), Docket No. 46.

1    or request for attorneys' fees, costs and incentive awards.  Von

2    Loewenfeldt Supp. Decl. ¶¶ 3-4.  As of January 9, 2009, Kerr &

3    Wagstaffe LLP did not receive any requests for exclusion from the

4    Class, objections to the settlement, or opposition to the Fees

5    Motion.  Id.  As of January 9, 2009, Steptoe & Johnson LLP, counsel

6    for Red Door, did not receive any requests for exclusion from the

7    Class, or objections or opposition.  Quincy Supp. Decl. ¶¶ 3-4.[3]

8    The Court received no objections.  No objections were made at the

9    hearing on the Settlement Motion and Fees Motion on January 23,

10   2009.

11

12   **III.  SETTLEMENT MOTION**

13        **A.    Legal Standards Governing Settlement**

14        Settlement of a class action law suit requires approval of the

15   court.  See Fed. R. Civ. P. 23(e).  The court must find that the

16   proposed settlement is fundamentally fair, adequate, and

17   reasonable.  Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir.

18   2003) (citing Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th

19   Cir. 1998)).  In making this determination, the court may consider

20   any or all of the following factors, if applicable:

21              the strength of plaintiffs' case; the risk,
                expense, complexity, and likely duration of
22              further litigation; the risk of maintaining
                class action status throughout the trial; the
23              amount offered in settlement; the extent of
                discovery completed, and the stage of the
24              proceedings; the experience and views of
                counsel; the presence of a governmental
25

26        [3] Stephanie J. Quincy, counsel for Red Door, attached a
     supplemental declaration to the Joint Reply Br. In Supp. of Mot.
27   For Final Approval ("Quincy Supp. Decl."), Docket No. 57.

28
                                      5

1    participant; and the reaction of the class
2    members to the proposed settlement.

3    Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 625 (9th
4    Cir. 1982).  This list is not intended to be exhaustive; the court
5    must consider the applicable factors in the context of the case at
6    hand.  See id.  Where, as here, the parties agree to settle the
7    dispute prior to certification of the class, the court must be
8    particularly vigilant in its scrutiny of the settlement.  Hanlon,
9    150 F.3d at 1026.

10   Despite the importance of fairness, the court must also be
11   mindful of the Ninth Circuit's policy favoring settlement,
12   particularly in class action law suits.  See, e.g., Officers for
13   Justice, 688 F.2d at 625 ("Finally, it must not be overlooked that
14   voluntary conciliation and settlement are the preferred means of
15   dispute resolution. This is especially true in complex class action
16   litigation. . . .").

17   While balancing all of these interests, the court's inquiry is
18   ultimately limited "to the extent necessary to reach a reasoned
19   judgment that the agreement is not the product of fraud or
20   overreaching by, or collusion between, the negotiating parties."
21   Id.  The court, in evaluating the agreement of the parties, is not
22   to reach the merits of the case or to form conclusions about the
23   underlying questions of law or fact.  See id.

24   **B.    The Risk of Continued Litigation**

25   The first relevant factor in the present matter is the risk of
26   continued litigation balanced against the certainty and immediacy
27   of recovery from the settlement.  See In re Mego Fin. Corp. Sec.

28

6

United States District Court
For the Northern District of California

<u>Litig.</u>, 213 F.3d 454, 458 (9th Cir. 2000).  Red Door denied, and continues to deny, liability for Plaintiffs' claims.  <u>See</u> Mem. of P&A in Supp. of Joint Application for Final Approval of Class Action Settlement ("Settlement Mem."), Docket No. 43, at 6.  No published California case directly analyzes the claim brought by Plaintiffs here with regard to commission calculation.  <u>Id.</u>  The law is also uncertain concerning Plaintiffs' meal and rest break claims.  <u>Id.</u>  Given the risks associated with continued litigation, the Settlement Agreement, which offers an immediate and certain award for all of the Class Members, appears a much better option.

**C.    Amount of Settlement**

Under the circumstances, the Court finds that the settlement amount is reasonable.  The $500,000 settlement payment agreed to by Red Door represents at least 50% of the damages Class Members could seek in this case.  Von Loewenfeldt Decl. ¶ 14.  This recovery is certainly reasonable.  "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair."  <u>Officers for Justice</u>, 688 F.2d at 628; <u>see</u>, <u>e.g.</u>, <u>In re Omnivision Techs.</u>, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2007)(approving settlement in which class received payments totaling 6% of potential damages).  The immediacy and certainty of the settlement award justifies a recovery smaller than the Class Members could seek in the case.  <u>See</u> <u>Omnivision Techs.</u>, 559 F. Supp. 2d at 1042.

**D.    Extent of Discovery**

The extent of the discovery conducted to date and the stage of the litigation are both indicators of counsel's familiarity with

7

**United States District Court**
For the Northern District of California

the case and of Plaintiffs having enough information to make informed decisions. See, e.g., In re Mego Fin. Corp. Sec. Litig., 213 F.3d at 459. A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair. See, e.g., Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 528 (C.D. Cal. 2004).

In response to written discovery requests, Red Door provided Plaintiffs' counsel with information and records regarding Lisa Knight, Marcie Dave, and the putative Class Members, including information concerning dates of employment, BEC, time clock records, and total compensation for the putative Class Members. Settlement Mem. at 7. Red Door also provided Plaintiffs' counsel with copies of relevant policies, procedures, and standard contracts. Id. The parties mediated their dispute before the Honorable James Warren at JAMS and were able to reach the agreement reflected in the Settlement Agreement. Id. The Court is confident that counsel in this matter is thoroughly familiar with the facts of this case and was therefore able to help Plaintiffs make an informed decision regarding the merits of the Settlement.

**E.      Experience and Opinion of Counsel**

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." Boyd v. Bechtel Corp., 485 F. Supp. 610, 622 (D.C. Cal. 1979). In addition to being familiar with the present dispute, Plaintiffs' counsel has considerable expertise in employment, consumer and class action litigation. See Von Loewenfeldt Decl. ¶¶ 4-5; see also Hough Decl. ¶ 4. There is nothing to counter the presumption that counsel's recommendation is

1  reasonable.   Therefore, the recommendation of counsel weighs in

2  favor of approving the Settlement Agreement.

3        **F.   Reaction of the Class**

4        "It is established that the absence of a large number of

5  objections to a proposed class action settlement raises a strong

6  presumption that the terms of a proposed class action settlement

7  are favorable to the class members." <u>Nat'l Rural Telecomms. Coop.</u>,

8  221 F.R.D. at 529.   While updated addresses for two of the eighty-

9  six potential Class Members could not be obtained, the parties'

10  efforts to notify all Class Members were reasonable and sufficient.

11  <u>See</u> <u>Silber v. Mabon</u>, 18 F.3d 1449, 1454 (9th Cir. 1994); <u>see</u> <u>also</u>

12  <u>Grunin v. Int'l House of Pancakes</u>, 513 F.2d 114, 121-22 (8th Cir.

13  1975).   The Court, Plaintiffs' counsel, and Red Door's counsel did

14  not receive a single objection from the potential Class Members who

15  received the formal Notice in this suit.   "By any standard, the

16  lack of objection of the Class Members favors approval of the

17  Settlement." <u>Omnivision Techs.</u>, 559 F. Supp. 2d at 1043 (citing

18  <u>Churchill Village LLC v. Gen. Elec.</u>, 361 F.3d 566, 577 (9th Cir.

19  2004); <u>Rodriguez v. West Publ'g Corp.</u>, Case No. CV05-3222 R, 2007

20  WL 2827379, at *10 (C.D. Cal. Sept. 10, 2007)).

21

22  **IV.   FEES MOTION**

23        **A.   Legal Standards Governing Attorneys' Fees**

24        It is well established that "a private plaintiff, or his

25  attorney, whose efforts create, discover, increase or preserve a

26  fund to which others also have a claim is entitled to recover from

27  the fund the costs of his litigation, including attorneys' fees."

28

United States District Court
For the Northern District of California

<u>Vincent v. Hughes Air W., Inc.</u>, 557 F.2d 759, 769 (9th Cir. 1977). This rule, known as the "common fund doctrine," is designed to prevent unjust enrichment by distributing the costs of litigation among those who benefit from the efforts of the litigants and their counsel.  <u>See</u> <u>Paul, Johnson, Alston, & Hunt v. Graulty</u>, 886 F.2d 268, 271 (9th Cir. 1989) ("<u>Paul, Johnson</u>").

In the Ninth Circuit, district courts presiding over common fund cases have the discretion to award attorneys' fees based on either the lodestar method (essentially a modification of hourly billing) or the percentage method proposed here.  <u>Chem. Bank v. City of Seattle (<i>In re</i> Wash. Pub. Power Supply Sys. Sec. Litig.)</u>, 19 F.3d 1291, 1296 (9th Cir. 1994).  Despite this discretion, use of the percentage method in common fund cases appears to be dominant.  <u>See</u>, <u>e.g.</u>, <u>Vizcaino v. Microsoft Corp.</u>, 290 F.3d 1043, 1047 (9th Cir. 2002); <u>Six Mexican Workers v. Ariz. Citrus Growers</u>, 904 F.2d 1301, 1311 (9th Cir. 1990); <u>Paul, Johnson</u>, 886 F.2d at 272.  The advantages of using the percentage method have been described thoroughly by other courts.  <u>See</u>, <u>e.g.</u>, <u><i>In re</i> Activision Sec. Litig.</u>, 723 F. Supp. 1373, 1374-77 (N.D. Cal. 1989) (collecting authority and describing benefits of the percentage method over the lodestar method).  The Court finds those advantages persuasive, and adopts the percentage method in this matter.

The ultimate goal under either method of determining fees is to reasonably compensate counsel for their efforts in creating the common fund.  <u>See</u> <u>Paul, Johnson</u>, 886 F.2d at 271-72.  It is not sufficient to arbitrarily apply a percentage; rather the district court must show why that percentage and the ultimate award are

10

appropriate based on the facts of the case.  <u>Vizcaino</u>, 290 F.3d at

1048.   The Ninth Circuit has approved a number of factors which may

be relevant to the district court's determination: (1) the results

achieved; (2) the risk of litigation; (3) the skill required and

the quality of work; (4) the contingent nature of the fee and the

financial burden carried by the plaintiffs; and (5) awards made in

similar cases.  <u>See</u> <u>id.</u> at 1048-50.   It is no surprise that these

factors are similar to those used in evaluating the adequacy of a

settlement.

**B.**     **<u>Results Achieved</u>**

The overall result and benefit to the class from the

litigation is the most critical factor in granting a fee award.  <u>In</u>

<u>re Heritage Bond Litig.</u>, No. 02-ML-1475 DT, 2005 WL 1594403, at *19

(C.D. Cal. June 10, 2005).   As previously discussed, the Settlement

Agreement creates a total award of $500,000, which represents at

least 50% of the possible damages.  <u>See</u> Section III(C), <u>supra</u>; Von

Loewenfeldt Decl. ¶ 14.   Red Door has also agreed to pay applicable

employer tax contributions with respect to payments to Class

Members, as well as all costs of sending payment to the Class

members.  <u>See</u> Mem. of P&A in Supp. of Pls.' Mot. for Order (1)

Approving Application for Attorneys' Fees; (2) Granting

Reimbursement of Expenses; and (3) Granting Incentive Awards,

("Fees Mem."), Docket No. 49, at 8-9.   This is a substantial

achievement on behalf of the class.  <u>See</u> <u>Heritage Bond</u>,2005 WL

1594403, at *19.   The results achieved weigh in favor of granting

the requested 30% fee.

///

11

**C.   Risk of Litigation**

The risk that further litigation might result in Plaintiffs not recovering at all, particularly in a case involving complicated legal issues, is a significant factor in the award of fees.  See Vizcaino, 290 F.3d at 1038.  The Court has not yet certified the class.  As discussed above, the law underlying some of the claims in this case is unsettled.  See Section III(B), supra; Von Loewenfeldt Decl. ¶ 21.  This uncertainty and the risks associated with continued litigation support granting the requested fee.

**D.   Skill of Counsel**

The "prosecution and management of a complex national class action requires unique legal skills and abilities."  Edmonds v. United States, 658 F. Supp. 1126, 1137 (D.S.C. 1987).  Plaintiffs' counsel are experienced class action litigators.  See Von Loewenfeldt Decl. ¶¶ 4-5; see also Hough Decl. ¶ 4.  Red Door's counsel understood the legal uncertainties in this case, and were in a position to mount a vigorous defense.  Fees Mem. at 13.  The sizeable recovery of $500,000 is some testament to Plaintiffs' counsel's skill.  This factor supports the requested fee.

**E.   Contingent Nature of the Fee**

The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee.  See Chem. Bank, 19 F.3d at 1299-1300; Vizcaino, 290 F.3d at 1050.  Here, Class counsel assumed representation of Plaintiffs on a purely contingency-fee basis.

12

Von Loewenfeldt Decl. ¶ 6; Hough Decl. ¶ 5.  They have expended over 442 hours litigating this case, without receiving any compensation.  Von Loewenfeldt Decl. ¶¶ 22-24; Hough Decl. ¶¶ 18-20.  Counsel also advanced over $5,802.89 in expenses related to prosecuting this action.  Von Loewenfeldt Decl. ¶ 26; Hough Decl. ¶ 22.  This substantial outlay, when there was a risk that none of it would be recovered, further supports the award of the requested fees.

**F.**   **Awards in Similar Cases**

The percentage of the Settlement Fund that Plaintiffs' counsel seeks is in excess of the benchmark of 25% established by the Ninth Circuit.  See, e.g., Powers v. Eichen, 229 F.3d 1249, 1256 (9th Cir. 2000).  However, in most common fund cases, the award exceeds that benchmark.  See Activision, 723 F. Supp. at 1377-78 ("nearly all common fund awards range around 30%").  In Romero v. Producers Dairy Foods, Inc., the court approved an attorneys' fee award that was 33% of the settlement fund in a wage-and-hour case involving allegations of unpaid wages and missed meal and rest breaks.  No. 05-0484, 2007 WL 3492841, at *4 (E.D. Cal. Nov. 14, 2007).  The Romero court noted that "fee awards in class actions average around one-third of the recovery."  Id. (quoting Newberg on Class Actions § 14.6 (4th ed. 2007)).  The award in Romero supports an award of 30% of the Settlement Fund in this case.

**G.**   **Reaction of the Class**

The reaction of the class may also be a factor in determining the fee award.  Heritage Bond, 2005 WL 1594403, at *21.  After reasonable efforts were made to notify all potential Class Members,

United States District Court
For the Northern District of California

no-one requested to be excluded or objected.  <u>See</u> Section III(F),

<u>supra</u>.  The Notice explicitly stated that Plaintiffs' Counsel would

ask the Court for up to $150,000 to be paid from the settlement

fund, plus actual, reasonable expenses.  <u>See</u> Thomas Decl., Ex. A

("Notice").[4]  This factor, like those above, supports the requested

award of 30% of the Settlement Fund.

**H.   <u>Lodestar Comparison</u>**

As a final check on the reasonableness of the requested fees,

courts often compare the fee counsel seeks as a percentage with

what their hourly bills would amount to under the lodestar

analysis.  <u>See</u>, <u>e.g.</u>, <u>Vizcaino</u>, 290 F.3d at 1050-51 ("Calculation

of the lodestar, which measures the lawyers' investment of time in

the litigation, provides a check on the reasonableness of the

percentage award.").

Plaintiffs' attorneys spent a total of 442.76 hours to achieve

settlement, which, at their hourly rates, results in a total

lodestar of $138,933.50.  Von Loewenfeldt Decl. ¶¶ 22-24; Hough

Decl. ¶¶ 18-20.  The requested 30% fee would amount to $150,000.

This represents a multiplier of approximately 1.08 times the

lodestar.  In similar cases, courts have approved multipliers

ranging between 1 and 4.  <u>See</u> <u>In re Chiron Corp. Secs. Litig.</u>, No.

C-04-4293 VRW, 2007 WL 4249902, at *7-8 (N.D. Cal. Nov. 30, 2007)

(surveying fee awards in class action suits and rejecting a

multiplier of 8.34).

---

[4] Brandilynn Thomas, a certified paralegal at Kerr & Wagstaffe
LLP, filed a declaration in support of the Fees Motion ("Thomas
Decl."), Docket No. 47.  A copy of the Notice is attached as an
exhibit to her declaration.

United States District Court

For the Northern District of California

1    Comparison with the lodestar demonstrates that the requested

2    30% fee award is reasonable, and further supports the Court's

3    decision to approve the fee application.

4    **I.    Reimbursement of Counsel's Expenses**

5    The Fees Motion also seeks to recover from the Settlement Fund

6    costs amounting to $5,802.89.  Attorneys may recover their

7    reasonable expenses that would typically be billed to paying

8    clients in non-contingency matters.  See Harris v. Marhoefer, 24

9    F.3d 16, 19 (9th Cir. 1994).

10    Plaintiffs' counsel's expenses are documented in detail in the

11    declarations from counsel.  See Von Loewenfeldt Decl. ¶ 25; see

12    also Hough Decl. ¶ 21.  The expenses relate to online legal

13    research, travel, postage and messenger services, phone and fax

14    charges, copying, court costs, and the costs of travel.  See id.

15    Attorneys routinely bill clients for all of these expenses, and it

16    is therefore appropriate for counsel here to recover these costs

17    from the Settlement Fund.

18    **J.    Incentive Awards**

19    Finally, the Class Representatives seek to recover $5,000 each

20    from the Settlement Fund as incentive awards.  "[N]amed plaintiffs,

21    as opposed to designated class members who are not named

22    plaintiffs, are eligible for reasonable incentive payments."

23    Staton, 327 F.3d at 977.  Marcie Dave and Lisa Knight participated

24    extensively in the investigations and meetings associated with this

25

26

27

28

15

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1  law suit.  Dave Decl. ¶ 7; Knight Decl. ¶ 7.[5]  They attended the

2  full-day mediation in this action.  Dave Decl. ¶ 7; Knight Decl. ¶

3  7.  They each estimate that they spent between forty and fifty

4  hours of their time helping to prosecute the case.  Dave Decl. ¶ 7;

5  Knight Decl. ¶ 7.  The Notice mentions incentive payments.  See

6  Notice at 2.  No one objected to the mention of incentive awards in

7  the Notice.  The requested incentive payment of $5,000 each to Lisa

8  Knight and Marcie Dave is reasonable.

9  ///

10  ///

11  ///

12  ///

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24

25  _____

26  [5] Marcie Dave filed a declaration in support of the Fees
Motion ("Dave Decl."), Docket No. 53.  Lisa Knight filed a
declaration in support of the Fees Motion ("Knight Decl."), Docket
27  No. 54.

28

**V.    CONCLUSION**

For the reasons outlined above, the Court GRANTS the Settlement Motion and GRANTS Plaintiffs' Fees Motion, and ORDERS as follows:

1.    The Court hereby APPROVES the Settlement Agreement.

2.    The Court AWARDS Plaintiffs' Counsel attorneys' fees in the amount of $150,000.

3.    The Court AWARDS Plaintiffs' Counsel reimbursement of expenses in the amount of $5,802.89.

4.    The Court AWARDS incentive payments of $5,000 each to Lisa Knight and Marcie Dave, the Class Representatives.

All such amounts are to be paid from the Settlement Fund in accordance with the terms of the Settlement Agreement.

IT IS SO ORDERED.

Dated: February 2, 2009

_____
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

17